J. M. MATTINGLY AND SARAH ANN HIS WIFE, APPELLANTS, *v.* JOHN H. BOYD, ADMINISTRATOR OF DAVID H. BOYD, DECEASED.

By the laws of Virginia, where an absent defendant is sued, and a garnishee is found within the State having funds of the absent debtor in his hands, the court may either suffer the fund to remain in the hands of the garnishee, or be paid over to the attaching creditor, security being given in either case to refund the money upon a final decree.

Whilst the suit is pending, therefore, the money must be considered as in the custody of the court, and not liable to be sued for by the absent debtor against his garnishee.

Consequently, the statute of limitations does not run whilst the suit is pending; and if an action is brought against the executor of the garnishee after the termination of the principal suit in sufficient time to clear the statute, a recovery must be had.

The garnishee having used the money, his executor must pay interest from the time when the attachment process was served, up to the time of the death of the garnishee—it being so claimed in the bill.

The garnishee was entitled to a reasonable sum for the trouble which he had taken.

THIS was an appeal from the Circuit Court of the United States for the district of West Tennessee.

*Mattingly et al.* v. *Boyd.*

The bill was filed by Sarah Ann Thorp, but in the course of proceedings her marriage with J. M. Mattingly was suggested, and the suit thereafter conducted in the names of Mattingly and wife.

The case is stated in the opinion of the court.

It was argued by *Mr. Robinson,* no counsel appearing for the appellee.

*Mr. Robinson* made the following points:

I. That if, when this suit was brought, Bylen had been alive and a citizen of Tennessee, and a party defendant, the plaintiff would not have been barred from proceeding against him by the statute of 21, Jac. 1, ch. 16, sec. 3, or by the Tennessee statute of 1715 taken from it, or by any other statute of that State. 1. Because, by the appointment of Bylen as guardian, an express trust was created, and the statute of limitations is no bar in the case of such express trust. (Pinkerton, &c., *v.* Walker and wife, 3 Hay., 221–'2; Bryant *v.* Pucket, ib., 252–'3; Parson, &c., *v.* Ivey, 1 Yer., 297; Armstrong *v.* Campbell, 3 Yer., 201; McDonald *v.* McDouald, 8 ib., 148; Smart and wife *v.* Waterhouse, 10 ib., 104; Porter *v.* Porter, 3 Humph., 586.) 2. Because the statute of 1715 does not bar actions of debt generally, but those only which are brought for arrearages for rent; (Kirkman *v.* Hamilton, &c., 6 Pet., 23; Tisdale *v.* Munroe, 3 Yer., 222;) and even if the plaintiff came within the 5th section, she comes within the disabilities provided for by the 9th section. 3. Because no statute of limitations in force in Tennessee bars an action on a specialty; neither such as Bylen gave when he qualified as guardian, nor such as was taken under the decrees of the Court of Chancery at Richmond. (Lawrence *v.* Bridleman, 7 Yer., 107; Hay *v.* Lea, 8 ib., 89; Rice *v.* Alley, 1 Sneed, 52;) and even if there were any statute of Tennessee prescribing a certain term of years within which an action must be commenced on such a bond as that, (pp. 36–'7,) the defendant does not show that such term of years has elapsed since the plaintiff married or attained the age of twenty-one years.

II. That supposing the plaintiff has a right to maintain a suit against Bylen or his representative for the money mentioned in said bond and the interest thereof, the right of action of Bylen against David H. Boyd, for the money received by the latter as agent, would not be barred by the time which has elapsed since Boyd received the money. For whether the attachment was right or wrong, Boyd claimed to hold and was allowed to hold the money pending the attachment, and is bound to answer for it when the attachment was terminated.

III. That seeing, if the plaintiff was to have a decree against Bylen, the latter would be entitled to a decree against Boyd, the proper course of equity is to decree immediately for the plaintiffs, against the administrator of Boyd—the party ultimately responsible. (Garnett, &c., *v.* Macon, &c., 6 Call, 349, and other cases cited in 2 Rob. Pract., 395–'8, old ed.)

IV. That the decree should be for $1,112.82, with interest from the 26th of October, 1826, (p. 32,) and the costs of this suit.

Mr. Justice CATRON delivered the opinion of the court.

Spencer Roane devised to his grand-daughter, Sarah Ann Roane, one thousand dollars. She was a minor, residing in Kentucky; and Joseph N. Bylen, her stepfather, was her guardian. Bylen sued Roane's executors for the money, and recovered it as guardian. David H. Boyd acted as the agent of Bylen, and received the money in Virginia, and held it as agent. Fayette Roane, the father of Sarah Ann, owed William H. Roane, of Richmond, Virginia, a thousand dollars. Bylen was Fayette Roane's executor; and William H. sued out a subpœna and filed an attaching creditor's bill in the Superior Court of Chancery at Lynchburg, against Bylen and others, to which David H. Boyd was a party defendant. The main purpose of the bill was, to restrain the money held by Boyd for Bylen as guardian, in Boyd's hands, until Roane could obtain a decree against Bylen, and enforce payment from Boyd as the debtor of Bylen.

Roane's restraining order was sued out and executed on Boyd the 10th day of October, 1827.

May 4, 1829, Boyd answered the bill, and admitted that he had received $1,112 as agent of Bylen, guardian of Sarah Ann Roane, on a power of attorney, "which money he intended to pay over to Bylen as guardian, until inhibited by the process of the court."

The suit lingered on the rules at Lynchburg till July 4, 1853, the restraining order being in full force from 1827 to 1853. In the mean time, Boyd had removed to Tennessee, and died there on the 25th of August, 1851; and about two months thereafter, John H. Boyd, the defendant to this suit, administered on David H. Boyd's estate; and on the 5th of September, 1853, this suit was brought. The main defence set up is, the acts of limitation barring actions in Tennessee. The suit was brought within two years after John H. Boyd administered, and therefore the act barring suits against administrators does not apply; and the only question is, whether the suit is barred by the general law barring actions founded on simple contracts, if not sued for within three years next after the cause of action accrued.

The settled law of Tennessee is, that where an agent obtains money of his principal, and converts it to his use, and is not sued until three years elapse, the remedy by assumpsit is barred. (McGinnis *v.* Jack and Cocke, Martin and Yer. R., 361; Hawkins *v.* Walker, 4 Yer. R.)

It is also settled in Tennessee, that where the statute commences to run, it runs on, unless there is a new promise within three years next before suit is brought; and an acknowledgment by the defendant of an actual subsisting debt due to the plaintiff within the three years is deemed equivalent to new promise, as the law raises a promise to pay on the acknowledgment. (Russell, adm'r, *v.* Gass, Martin and Yerger's R., 270.) This acknowledgment was made by Boyd, in 1829, by his answer, filed in the Superior Chancery Court at Lynchburg. Had Bylen sued him at law, and the act of limitations been pleaded, the statement in Boyd's answer would have been a good replication.

The question then comes to this—whether Bylen, as guardian, or Sarah Ann Roane, after she became of age, had cause of action against Boyd whilst the suit at Lynchburg was pending? The act of 1819 (Virginia Revised Code, 474) in substance provides, that where a suit in chancery is prosecuted against a defendant who is out of the State, and against a defendant within the State, who has in his hands effects of or is indebted to the absent defendant, the court may make an order, and require surety. if it shall appear necessary, to restrain the defendant within the State from paying the debt by him owing to the absent defendant; or the court may order such debt to be paid to the attaching creditor, upon his giving sufficient security for the return of the money to such person, and in such manner as the court shall afterwards direct.

The act also provides how the absent defendant shall be notified by publication; and if he does not appear, the court may hear the plaintiff's proofs of the justice of his demand, and may proceed to take the bill for confessed, and to decree thereon as to the court may seem proper, and enforce due execution of the decree.

The court did not require security from Boyd to have the money forthcoming according to a decree, that might be subsequently made; but set the cause down for hearing against him, leaving the money in his hands.

Bylen never answered, but urged Boyd by letters to employ counsel and defend the suit, and to send him the money if the bill was dismissed; and thus the matter stood until 1853, when the suit abated by William H. Roane's death.

As, by the Virginia attachment law, the court might require

surety of the garnishee, to restrain him from paying the money in his hands to his creditor, pending the attachment suit, or order it to be paid the attaching creditor, on his giving surety to refund if the suit was decided against him, it follows that the fund was in custody of the law, and that the garnishee could not be sued a second time; so that, in this case, if Bylen, or Miss Roane, had sued Boyd pending the attachment suit, he or she could have pleaded in abatement the former suit pending, to the same effect as if he had been twice sued by Bylen. This is plainly inferrible from the face of the statute; and the position is supported by adjudged cases both in England and in this country. (Brooke *v.* Smith, 1 Salk., 280; Embree and Collins *v.* Hanna, 5 John. R., 101; Irvine *v.* The Lumberman's Bank, 2 Watts and Sargent, 208.) The same rule was recognised by this court, in the case of Wallace *v.* McConnell, 13 Peters, 151. Mr. Drake, in his well-considered treatise on attachment, (section 720,) has stated the practice in different States, to which book we refer.

We are opinion that Boyd's holding was not adverse until the suit in Virginia was ended; and, secondly, that neither Bylen, as guardian, nor Sarah Ann Roane, after she became of age, had *cause of action* against Boyd for retaining the money, whilst the suit was pending, and therefore the act of limitations is no defence.

The next question is, whether Boyd is bound to pay interest on the fund? As a general rule, a garnishee is not bound to pay interest, because he is liable to be called on to pay at all times. (11 Sargent and Rawle, 188; Drake Pr., 725; 1 Washington Va. R., 149.)

But here the bill alleges that he used the money as his own; and the proof is, that in the latter part of November, 1826, he received the money as agent of Bylen, and immediately loaned it to George Boyd, his father, who was in failing circumstances, and shortly thereafter became insolvent. As this was an appropriation of the money, and a manifest breach of trust, David H. Boyd was bound to account with interest.

The bill only claims interest from the time the attachment process was served, up to the time of David H. Boyd's death; we therefore order that interest be calculated from the 23d of October, 1827, to the 25th of August, 1851, these being the dates from and to which interest is claimed.

In June, 1826, David H. Boyd forwarded an account to Bylen for the money he had expended for the latter, in prosecuting the suit, at Richmond, against Spencer Roane's executors, including one hundred dollars for his trouble in attending to the business.

The amount claimed is $216.39. We think this charge is reasonable, and order it to be deducted from the principal sum sued for, which is $1,112.33, and leaves $896.44 due of principal, on which interest after the rate of six per cent. per annum will be calculated, from 23d day of October, 1827, up to the 25th day of August, 1851, to be levied of the goods and chattels of the estate of David H. Boyd in the hands of his administrator, John H. Boyd, the respondent, to be administered.

It is further ordered, that the decree of the Circuit Court for the district of West Tennessee, dismissing the bill, be reversed, and that the cause be remanded to said court, for further proceedings to be had therein.